UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WALTER T. TURK, JR.,

          Plaintiff,

v.                                                                    Case No.  5:06-cv-443-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

          Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his applications for a period of disability and disability insurance benefits and supplemental security income payments. (Doc. 1.)  The Commissioner has answered (Doc. 10), and both parties have filed briefs outlining their respective positions. (Docs. 13 & 14).  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

### I. PROCEDURAL HISTORY

On June 13, 2003, Plaintiff filed an application for a period of disability and disability insurance benefits (R. 91-93) and an application for supplemental security income (R. 381-82), alleging a disability onset date of July 19, 2002 in both applications.  Plaintiff's applications were denied initially and upon reconsideration. (R. 54-58, 385-91.)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 53.)  After an administrative hearing (R. 394-429), the ALJ

issued a decision unfavorable to Plaintiff on December 28, 2005. (R. 14-29.) Plaintiff's request for review of the hearing decision by the Social Security Administration's Appeals Council was denied.  (R. 6-13.)  Plaintiff then appealed to this Court.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was forty-seven years old on July 19, 2002, the date he alleges he became disabled and was fifty-one years old on the date of the ALJ's decision. (R. 103.) He has a tenth grade education (R. 103) and a high school equivalence degree. (R. 400.) Plaintiff has past relevant work as a machine operator and roofer. (R. 104, 127.) Plaintiff contends that he is unable to work due to headaches, neck pain, severe lower back pain that radiates down his legs, tingling feet, some hearing loss, depression and memory and concentration problems. (R. 103.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff suffered from a

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] *See id.*

[21] *See* Doughty at 1278 n.2.

back disorder (disc), chronic back pain with radiation into the lower extremities, mild hearing loss and an adjustment disorder. (R. 19.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (R. 20.)

The ALJ then found that Plaintiff retains the residual functional capacity ("RFC") to perform simple, unskilled, low stress work, with one, two or three step instructions. (R. 24.)   The ALJ further found that Plaintiff can lift and carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk with normal breaks for a total of 6 hours in an 8-hour workday; sit with normal breaks for a total of two hours in an 8-hour workday; but that he should avoid ascending or descending stairs and pushing and pulling with his lower extremities. The ALJ found that Plaintiff is able to occasionally balance, stoop, crouch, kneel and crawl but never climb and he is limited to work that does not require exposure to hazards in the workplace such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, and unprotected regions of holes and pits.  The ALJ also found that while Plaintiff's depression and pain affect his ability to concentrate upon complex or detailed tasks, Plaintiff would remain capable of understanding, remembering, and carrying out simple job instructions.   In reaching this conclusion, the ALJ did not find Plaintiff's subjective complaints and alleged limitations to be fully credible. (R. 25-27.)  The ALJ then determined that Plaintiff is unable to perform any of his past relevant work (R. 27) but that he is not disabled because he is able to perform work that exists in significant numbers in the national economy. (R. 28.)  In reaching this conclusion, the ALJ relied on the testimony of a vocational expert.  (R. 27-28.)

On January 9, 2001, Plaintiff was involved in a work-related accident and injured his lower back. (R. 185.) Plaintiff was examined by Mario Medero, M.D., who placed him on light duty with lifting no more than 15 pounds and no bending at the waist. (Id.) Plaintiff continued to report significant pain and discomfort to the low back area with radiation down his hips. (R. 179-84). An MRI on February 19, 2001, was negative for any frank herniation correlating with Plaintiff's complaint and Dr. Medero concluded that the lack of radicular symptoms would indicate that none of the minimal findings on the MRI would be causing his current local symptoms. (R. 179, 208.) Over the next year and a half, Plaintiff was seen by Dr. Medero and his colleague Edward L. Demmi, M.D. (R. 157-78.) Plaintiff continued to complain of low back pain with radiation into his hips and legs. (Id.) On October 24, 2001, Dr. Demmi noted that Plaintiff had reached maximum medical improvement and that he had recently undergone a functional capacity evaluation placing him in the medium work category. (R. 164.)

On April 18, 2001, Plaintiff was evaluated by Joseph C. Flynn, Jr., M.D. who diagnosed low back pain with complaints of bilateral lower extremity radicular symptoms. (R. 197-98.) X-ray films showed mild decreased disc height at L3-4 and L4-5, with prominent anterior osteophyte formation at the inferior end plate of L3 and the superior end plate of L4 anteriorly, and congenital short pedicles throughout L1 through L5. (R. 197.) An MRI on April 31, 2001 showed a diffusely bulging L5-S1 disc with disc hernation eccentric to the left at L5-S1. (R. 195, 206.) On May 23, 2001, Dr. Flynn continued Plaintiff on light duty and noted that he could not lift over twenty pounds. (R. 195.) Plaintiff underwent three epidural blocks with no significant improvement. (R. 165-71.)

A December 23, 2002 MRI showed moderate to severe degenerative spondylosis with a small left paracentral disc protrusion at L5-S1 level, which did not appear significantly progressed. (R. 214-15.) On January 7, 2003, Barry J. Kaplan, M.D., a neurosurgeon, reported that Plaintiff had reached maximum medical improvement one year after his injury with 4% impairment of the body as a whole. (R. 212-13.) Dr. Kaplan noted that Plaintiff was taking tylenol for pain relief. (R. 212.) Dr. Kaplan further found that Plaintiff was capable of performing light-duty work, with no lifting greater than 20 pounds and no pulling, bending, or stooping. (R. 213.) Dr. Kaplan recommended exercise to strengthen Plaintiff's spine as opposed to surgery. (Id.)

On September 18, 2003, Doctor Demmi and Doctor Medero performed a consultative evaluation. (R. 220-24.) Plaintiff reported constant lower back pain radiating into his hips and legs, numbness, an inability to set or stand for prolonged periods of time, a neck pain. (R. 220.) The doctors diagnosed Plaintiff with low back pain status post fall, neck pain and hearing loss. (R. 223.) Plaintiff had decreased range of motion in the bilateral shoulders, hips, elbows and ankles and cervical spine and lumbar spine. (Id.) Plaintiff's straight and seated leg raises were normal. (Id.) Plaintiff's gait was antalgic and he could walk without an assistive device. Plaintiff's grip strength was decreased to 3/5 bilaterally and motor deficits were noted to the upper and lower extremities at 4/5 bilaterally. (Id.)

On January 8, 2004, Rodney A. Poetter, Ph.D., performed a consultative psychological evaluation. (R. 233-35.) Plaintiff reported that he could not work due to his physical limitations and chronic pain stemming from his work injury. (R. 233.)

Plaintiff reported occasional numbness in his legs and daily headaches that become severe two to three times per week. (R. 234.) Plaintiff reported taking over-the-counter Advil for his pain. (Id.) Plaintiff reported that he gets along with others and that he sometimes goes to church. Plaintiff reported that he has never been under the care of a psychiatrist or involved in counseling, and he has never taken psychotropic medication. (Id.) On examination, Dr. Poetter found no indication of any significant memory or concentration dysfunction. (Id.) Plaintiff had moderate deficits in abstract thinking. (R. 235.) Dr. Poetter noted that Plaintiff has illusions and suspiciousness at times, but no signs of hallucinations or delusional thinking. (Id.) Although Plaintiff reported depressed mood and melancholia, Dr. Poetter found no indication of any major affective disorder. (Id.) Dr. Poetter found that his symptoms were suggestive of Adjustment Disorder with Depressed Mood; and Nicotine Dependence. (Id.) Dr. Poetter recommended that Plaintiff be referred to the Division of Vocational Rehabilitation for vocational counseling and placement assistance. (Id.)

During 2004, Plaintiff sought treatment from the Veterans Administration Hospital for a variety of complaints, including lower back pain with radiculopathy, headaches and dizziness. (R. 251-357, 363-80.) A CT scan of the Plaintiff's head showed a left anterior temporal lobe arachnoid cyst and no evidence of an acute process. (R. 263, 286-87.) A MRI of the lumbar spine in April 2004 showed right neural foraminal stenosis at L4-5 secondary to a disc osteophyte complex and facet hypertrophy and broad-based disc protrusion with facet hypertrophy at L3-4 resulting in bilateral caudal neural foraminal narrowing. (R. 285-86, 290.) On November 10, 2004, Plaintiff underwent a CT myelogram of the lumbar spine which showed multilevel

neuroforaminal narrowing with a broad-based disc protrusion and diminished disc height at the L5-S1 level, multilevel degenerative disc osteophyte complex formation and mild scoliotic change.  (R. 331-35.)  A November 2004 MRI scan of the brain showed an unchanged arachnoid cyst. (R. 328.)  Plaintiff continued to complain of severe constant low back pain with radiation, however, an EMG on April 25, 2005 showed no evidence of left or right lumbar or sacral radiculopathy.  (R. 359.)  On at least one occasion, Plaintiff refused medication and counseling for depression.  (R. 367.)

On April 11, 2005, Charles M. Grudem, M.D., performed an independent medical examination at the request of Plaintiff's counsel. (R. 360-62.)    After reviewing the medical records and examining Plaintiff, Dr. Grudem opined that Plaintiff was permanently and totally disabled prior to July of 2002 and that he was unable to do work that requires sitting, standing or bending at all or any degree of significant lifting, turning, pushing or pulling.  Dr. Grudem also noted that Plaintiff had deteriorated psychiatric status and that he seemed "quite depressed" during the evaluation.

A physical residual function capacity ("RFC") assessment was performed by non-examining state agency physician, Nicholas H. Bancks, M.D. on December 26, 2003.  (R. 225-32.)   Based on his review of the medical records, Bancks concluded that Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday; and push and/or pull without limitation.  Bancks determined that Plaintiff should never climb ladders, ropes or scaffolds but that she could occasionally climb ramp/stairs, balance, stoop, kneel, crouch and crawl.  Bancks

also found that Plaintiff's gross manipulation was limited and that he should avoid concentrated exposure to hazards. (R. 228-29.)

There is one psychological RFC assessment of record which was performed by a non-examining state agency psychologist, Alan J. Harris, Ph.D. (R. 236-50.) Based on his review of the medical records, Harris concluded that Plaintiff's mental impairment -- affective disorder -- is not a severe impairment and results in no functional limitations. (Id.)

Plaintiff testified at the hearing on August 19, 2005. (R. 393-429.) Plaintiff testified that he lives in a double-wide mobile home with his wife. (R. 397.) Plaintiff testified that as a sheet metal worker and in his roof construction job, he had to climb stairs and ladders, balance and squat. (R. 403.) Plaintiff testified that he stopped working on July 19, 2002 because of the severe pain resulting from his on-the-job injury. (R. 404.) Plaintiff testified that he had burning, sharp pains and numbness in his lower back and the pain radiated down into his hips, legs and feet. (R. 409-10.) Plaintiff testified that he also has pain in the back of his neck, radiating into his shoulders and arms. (R. 413-14.) Plaintiff testified that he has trouble with reading comprehension. (R. 411-13.) Plaintiff testified that he normally sleeps two to three hours per night. (R. 414.) Plaintiff testified that he takes care of the yard, including mowing the grass with a push mower, does the dishes, and vacuums. (R. 397-98.) Plaintiff testified that he is able to take care of himself. (R. 415.) He testified that he still drives and that he drives himself to the Veterans Administration Hospital in Gainesville, which is more than one hour away from his home. (R. 418.) Plaintiff testified that he can lift 15 pounds without causing too much pain, walk to his mailbox

and back, lift his hands above his head, sit for thirty minutes without having to get up and change position, stand for forty five minutes without having to sit down and drive in his jeep for forty-five minutes without stopping. (R. 420-22.)

A vocational expert, R. David San Filippo also testified. (R. 422-29.) The ALJ posed a hypothetical question that included a limitation to low stress, simple, unskilled work, with one, two or three-step instructions; lifting and carrying 10 pounds frequently and 20 pounds occasionally; standing and/or walking with normal breaks for a total of six hours of an eight-hour workday; and sitting with normal breaks for a total of two hours of an eight hour workday; no ascending or descending stairs; no pushing and pulling motions with the lower extremities; no activities requiring bilateral manual dexterity; no hazards; no climbing but occasional balancing, stopping, crouching, kneeling, and crawling. (R. 425-26.) The VE opined that such an individual could not perform Plaintiff's past relevant work but that he could perform light, unskilled occupations such as dining room attendant, fast food worker and cashier. (R. 426-27.) The VE opined that an individual could perform the same occupations even if he could not perform any fine manipulation. (R. 427.) The VE further opined that if the individual required a sit/stand option, it would eliminate the light occupations and it would significantly erode the range of occupations at an unskilled level. (R. 427-28.)

## IV.  DISCUSSION

Plaintiff first argues that the ALJ improperly analyzed his subjective complaints of pain because the ALJ failed to make a proper credibility determination. For the following reasons, the Court concludes that the ALJ's credibility findings were adequate and supported by substantial evidence.

In evaluating disability, the ALJ must consider all of a claimant's impairments, including his subjective symptoms, such as pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.[22] The Eleventh Circuit has set forth a three-part test that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms.[23] The "pain standard", which applies to complaints of subjective conditions other than pain, requires that the plaintiff first produce medical or other evidence of an underlying medical condition. Then the plaintiff must demonstrate either that objective medical evidence confirms the severity of the alleged symptom arising from that condition or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged symptom.[24]

If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.[25] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[26] A reviewing court will not disturb a clearly articulated credibility finding with substantial

---

[22] 20 C.F.R. § 404.1528.

[23] Id. at 1560.

[24] Id.

[25] Foote, 67 F.3d at 1561-62; Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[26] Foote at 1562-1563.

supporting evidence in the record.[27]  However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[28]  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[29] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[30]

In the instant case, the ALJ applied the Eleventh Circuit's pain standard "threshold"[31] assessment to Plaintiff's subjective complaints by noting the Plaintiff's complaints of back pain.  (R. 25.)  While the ALJ did not cite the exact language of the standard, he did state that he "must consider all of the relevant evidence, including the medical evidence, the medical opinions (20 CFR §§404.1527 and 416.927 and Social Security Ruling 96-2p) and the claimant's subjective complaints (20 C.F.R. § 404.1529, and Social Security Ruling 96-7p.)"  (R. 24-25.)  This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard.  Moreover, the ALJ cited 20 C.F.R. § 404.1529, which contains the same

---

[27] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[28] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[29] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[30] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[31] Marbury, 957 F.2d at 839.

14

language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[32]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing an underlying medical condition, chronic back pain with radiation into the lower extremities, that could be expected to give rise to pain.  Once Plaintiff met this initial burden, however, the ALJ found that his subjective complaints of disabling pain were only partially credible.

The ALJ found that Plaintiff's subjective complaints were not consistent with the objective clinical findings and laboratory findings in the record. (R.25.) Dr. Medero limited Plaintiff to light duty, lifting fifteen, and then twenty pounds (R. 177, 185).  Dr. Demmi noted a functional capacity evaluation placed Plaintiff in the medium work category and he subsequently continued Plaintiff at work consistent with his functional capacity evaluation.  (R. 157-64.)  Dr. Flynn, Plaintiff's orthopedist, continued Plaintiff on light duty (R. 195) and Dr. Kaplan, concluded that Plaintiff was capable of performing light-duty work, with no lifting greater than 20 pounds and no pulling, bending, or stooping.  (R. 213.)   Moreover, the ALJ noted that the opinions of the state agency physician and psychologist were consistent with these objective findings and with the record as a whole.

The ALJ also found that the record failed to show that Plaintiff had required significant forms of treatment, such as surgery, pain management, periods of hospitalization, or emergency room treatment for his physical impairments.  (R. 25.)

---

[32] See Wilson, 284 F.3d at 1226.

The ALJ further noted that while Plaintiff had been prescribed narcotic based pain relief, Plaintiff had reported to several doctors that he was controlling his pain with only over-the-counter medications. (R. 26.) In addition, the ALJ found that Plaintiff's testimony regarding his daily activities –i.e.,  that he mowed his lawn with a push mower, took care of pets, did light shopping and light household chores, went to church and drove regularly – was inconsistent with his complaints of disabling pain.

Nevertheless, Plaintiff argues that his subjective complaints were supported by the December 23, 2002 MRI and Dr. Grudem's opinion that he was totally disabled. However, Plaintiff's treating physician, Dr. Kaplan ordered the December 2002 MRI and after reviewing the MRI report, Dr. Kaplan concluded that Plaintiff was capable of light duty work.  (R. 213.)

Moreover, the ALJ expressly considered Dr. Grudem's report, but declined to give it controlling weight because Dr. Grudem had been hired by Plaintiff's lawyer to perform an independent medical examination and had only examined Plaintiff on one occasion. More notably, the ALJ concluded that Dr. Grudem's opinion that Plaintiff was totally disabled in early 2002 sharply contrasted with the opinions of every other doctor, who had examined him and concluded that Plaintiff could perform at least light work. The ALJ may discount the opinion of a physician, where as here, it is inconsistent with the record as a whole.[33] Accordingly, the Court concludes that the ALJ's decision to discount Dr. Grudem's opinion was supported by substantial evidence.

---

[33] See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

It follows that the ALJ explicitly and adequately articulated reasons to discredit Plaintiff's complaints of disabling pain, and all of the reasons the ALJ used to discredit such complaints are amply supported by the record. Because the task of choosing between conflicting evidence is one that is peculiarly suited to the fact finder,[34] and because there is substantial evidence that supports the ALJ's decision to discredit Plaintiff's complaints, the Court will not disturb the ALJ's determination that Plaintiff's pain was not so severe as to preclude him from performing work that exists in significant numbers in the national economy.

Plaintiff next argues that the ALJ failed to accept the testimony of the vocational expert based on a hypothetical that included Plaintiff's need for a sit/stand option. The ALJ posed the following hypothetical question:

> I'd like for you to assume an individual of the Claimant's age, education, and past work experience. It would require work which is low stress, simple, unskilled, with one, two, or three-step instructions. For the first hypothetical, I would like for you to assume the individual could only lift and carry 10 pounds frequently and 20 pounds occasionally. The individual could stand and/or walk with normal breaks for a total of six hours of an eight-hour workday and sit with normal breaks for a total of two hours of an eight-hour workday . . . The individual should avoid ascending and descending stairs. Should avoid pushing and pulling motions with the lower extremities. Can perform the pushing and pulling motions with his upper extremit[ies] within the aforementioned weight restrictions. Can't perform activity requiring bilateral manual dexterity [inaudible] gross and fine manipulation. Should avoid hazards in the workplace due to medication side effects, pain. As far a postural activities, no climbing but occasional balancing, stooping, crouching, kneeling, and crawling.

(R. 425-26.)

---

[34] Hand v. Heckler, 761 F. 2d 1545,1549 (11th Cir. 1985).

Based on this hypothetical, the vocational expert opined that Plaintiff would not be able to perform his past relevant work but that he could perform light, unskilled occupations such as dining room attendant, fast food worker and cashier. (R. 426-27.)

When asked the same hypothetical with the addition of a sit/stand option, the vocational expert opined that the addition of the sit/stand option would eliminate the light occupations because those occupations require an individual to stand for at least six hours of an eight-hour day with all the regular breaks. (R. 427-28.) The VE further opined that it also would be an issue at the sedentary level because low sedentary unskilled work is "performed on a consistent rate requiring an individual to maintain sitting for up to two hours at a time." (R. 428.)

While the ALJ asked the sit/stand hypothetical at the hearing, it was not ultimately relevant to the ALJ's disability determination. In his Decision, the ALJ specifically found that Plaintiff could stand and/or walk with normal breaks for a total of 6 hours in an 8-hour workday and sit with normal breaks for a total of 2 hours in an 8-hour workday. (R. 24.) Thus, in evaluating the Plaintiff's RFC the ALJ did not conclude that a sit/stand option was required and, therefore, the ALJ was free to ignore the VE's testimony in response to the hypothetical question that included the sit/stand option.

Without pointing to any record evidence, Plaintiff argues that a sit/stand option was necessary "to deal with severe back pain resulting from the two vacuum disks." (Plaintiff's Memorandum at 21.)   However, Doctor Medero, Doctor Demmi, Doctor Kaplan and Doctor Flynn all concluded that Plaintiff could perform light work without any additional sit/stand limitations and the non-examining state agency physician did not find that any additional sit/stand limitations were necessary. Moreover, as discussed

above, the ALJ discredited the opinion of Dr. Grudem, the only doctor giving an opinion that was arguably supportive of a sit/stand option. Accordingly, the ALJ's determination that a sit/stand option was not necessary is supported by substantial record evidence.

Finally, Plaintiff argues that the ALJ's decision is rendered arbitrary and capricious because the Agency subsequently found that Plaintiff was disabled as of December 29, 2005 based on a new application. However, the only issue before this Court is whether the ALJ's Decision is supported by substantial evidence.[35] In making this determination, the Court may only consider the evidence actually presented to the ALJ. Thus, this Court cannot consider the subsequent favorable decision in determining whether the instant ALJ's decision was supported by substantial evidence. Moreover, Plaintiff offers absolutely no evidentiary support for his assertion that the subsequent favorable decision (that was issued more than one year after the instant Decision) was based on the exact same evidence. Accordingly, the Court rejects Plaintiff's argument that the ALJ's decision was rendered arbitrary and capricious based solely on the subsequent favorable decision.

## V. CONCLUSION

In view of the foregoing the decision of the Commissioner is due to be **AFFIRMED**. The Clerk is directed to terminate any pending motions, enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida this 5th day of February, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to: Counsel of Record

---

[35] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).